IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 12-18097 |
| | ) | |
| ICM, Inc., | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| Anchor Mechanical, Inc. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 12-01659 |
| | ) | |
| Catherine L. Steege, as trustee of the estate of ICM, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF DECISION

This adversary proceeding presents a question about the requirements for an Illinois statutory trust in favor of subcontractors. The plaintiff in the proceeding is a subcontractor, Anchor Mechanical, Inc. Anchor alleges that it performed work on a project for which ICM, Inc., the debtor in this Chapter 7 case, was the general contractor. Anchor's complaint states that Anchor fully performed its work on the project, but was not paid by ICM. The complaint seeks to impose a trust in favor of Anchor pursuant to Section 21.02(a) of the

Illinois Mechanics Lien Act, 770 ILCS 60/21.02(a) (2010), in the amount of its unpaid compensation, on funds of ICM held by the Chapter 7 trustee.

The trustee has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), applicable in bankruptcy cases under Fed. R. Bankr. P. 7012(b). The trustee notes that although the complaint alleges that Anchor gave ICM a waiver of its mechanics lien and that ICM obtained payment after giving its own, separate lien waiver to the owner of the project, the complaint fails to allege that the payment to ICM resulted from Anchor's lien waiver. The trustee argues that Section 21.02(a) imposes a trust only on funds received as a result of the trust claimant's own lien waiver.

The trustee's motion raises a question of the interpretation of Section 21.02(a) that has not previously been addressed in a published opinion. However, as discussed below, (1) the language of the statute can only reasonably be interpreted as the trustee has argued and (2) only the trustee's reading is consistent with other provisions of the Mechanics Lien Act. Therefore the trustee's motion to dismiss the complaint will be granted.

## Jurisdiction

Under 28 U.S.C. § 1334(a), the federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code, but 28 U.S.C. § 157(a) allows the district courts to refer these cases to the bankruptcy judges for their districts, and the District Court for the Northern District of Illinois has made such a reference of all of its bankruptcy cases. N.D. Ill. Internal Operat-

2

ing Procedure 15(a). Under 28 U.S.C. § 157(b)(1), a bankruptcy judge to whom a case has been referred may enter final judgment on "core proceedings arising under" the Bankruptcy Code. The question to be determined in this proceeding—whether property of the debtor is subject to a trust—affects the nature and extent of property of the debtor's bankruptcy estate, and so is a core proceeding under 28 U.S.C. § 157(b)(2)(A), in that it affects the administration of the estate. *See Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 401-02 (4th Cir.1992) (claims of constructive trust against assets in the possession of a trustee are core proceedings).

## Allegations of the Complaint

Anchor's complaint—titled Third Amended Adversary Complaint for Constructive Trust under the Illinois Mechanics' [sic] Lien Act (Adversary Proceeding 12-01659, Docket No. 17)— addresses two separate matters. First, as to contract performance and payment, the complaint alleges:

1. The owner of real property in Chicago entered into a contract with ICM to perform construction work on the property. (Complaint, ¶ 7.)

2. ICM, in turn, entered into a subcontract with Anchor for a portion of the construction work. (Complaint, ¶ 8.)

3. Anchor fully performed the work required by the subcontract. (Complaint, ¶ 9.)

4. The owner paid ICM for the work required by its contract with ICM, including the work done by Anchor under the subcontract. (Complaint, ¶¶ 15, 26.)

5. ICM did not pay Anchor for its work. (Complaint, ¶ 18.)

3

Second, the complaint addresses waivers of mechanics liens by both ICM and Anchor:

1. ICM submitted a lien waiver to the owner, attached to the complaint as Exhibit 1, in exchange for the payment it received from the owner. (Complaint, ¶ 16.)

2. The lien waiver is dated February 13, 2012, and acknowledges that ICM received full payment from the owner as consideration for ICM's waiver. (Complaint, Exhibit 1.)

3. As part of the lien waiver form submitted to the owner, ICM also submitted a "Contractor's Affidavit," signed by ICM's president under oath and notarized on February 13, 2012, falsely stating both that ICM was the only party who had furnished material or labor in connection with ICM's contract services and that there were no other contracts for work outstanding or anything due to any person other than ICM. (Complaint, Exhibit 1.)[1]

4. Before February 13, 2012, ICM requested that Anchor provide ICM with a waiver of Anchor's mechanics lien. (Complaint, ¶ 21.)

5. Anchor submitted a lien waiver and recorded the waiver in August 2012. (Complaint, ¶ 23.)

Based on these allegations, the complaint seeks a judgment "declaring that the funds received by ICM are not property of the Estate [and] that the Trustee shall hold the funds in trust for the benefit of Anchor." Paragraph 22 of the complaint asserts that the basis for Anchor's trust claim is Section 21.02(a) of the Illinois Mechanics Lien Act, 770 ILCS 60/21.02(a).

---

[1] Although Paragraph 17 of the complaint alleges that the lien waiver "asserted that ICM fully paid all subcontractors," Exhibit 1 actually identifies no subcontractors and makes no statement about any payment to subcontractors.

4

Discussion

Section 21.02(a) of the Illinois Mechanics Lien Act states the following:

> Money held in trust; trustees. Any owner, contractor, subcontractor, or supplier of any tier who requests or requires the execution and delivery of a waiver of mechanics lien by any person who furnishes labor, services, material, fixtures, apparatus or machinery, forms or form work for the improvement of a lot or a tract of land in exchange for payment or the promise of payment, shall hold in trust the sums received by such person as the result of the waiver of mechanics lien, as trustee for the person who furnished the labor, services, material, fixtures, apparatus or machinery, forms or form work or the person otherwise entitled to payment in exchange for such waiver.

770 ILCS 60/21.02(a) (2010). Although the single sentence of this section is somewhat complex, its general application in the present case is clear. A payment received by a contractor like ICM is subject to a trust in favor of a subcontractor like Anchor if two conditions are met. First, the contractor must have requested or required the subcontractor to execute and deliver a waiver of the subcontractor's mechanics lien. Second, the contractor must have received the payment "as the result of the waiver of mechanics lien."

Anchor's complaint plainly satisfies the first condition, alleging in Paragraph 21 that ICM requested Anchor to provide a lien waiver. The parties, however, disagree about whether the complaint satisfies the second condition. In her motion to dismiss, the trustee contends that the complaint fails to do so because it does not allege that ICM received payment as a result of a lien waiver that Anchor executed and delivered. Anchor, in contrast, argues that the complaint satisfies the condition by alleging that ICM received payment as a

5

result of the lien waiver—Exhibit 1 to the complaint—that ICM executed and delivered.

Accordingly, the dispute over whether the complaint should be dismissed under Rule 12(b)(6) is not about whether the complaint provides enough factual detail, the issue addressed in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Rather, the dispute is about the meaning of Section 21.02(a) of the Illinois Mechanics Lien Act. Anchor does not dispute the trustee's assertion that its complaint fails to allege that ICM received payment as a result of a lien waiver submitted by Anchor. Indeed, Exhibit 1 to the complaint states the contrary, that payment to ICM was based exclusively on ICM's own lien waiver, which does not mention Anchor and reflects no sums due to any subcontractor. (The complaint alleges at Paragraph 23 that Anchor recorded its own lien waiver six months after the owner made its payment to ICM.) On the other hand, consistent with the content of Exhibit 1, the complaint alleges, at Paragraph 16, that ICM's lien waiver caused the owner to pay ICM.

Anchor's brief opposing the trustee's motion to dismiss (Adversary Proceeding 12-01659, Docket No. 25) accurately reflects the parties' different readings of Section 21.02(a). Anchor acknowledges the trustee's position that the section imposes a trust in favor of a subcontractor only on payments that the contractor received on account of a lien waiver executed and delivered by the subcontractor. In response, the brief argues (at page 6) that the section does not

6

contain this limitation, but rather "requires only that Anchor plead that [ICM] received funds from the Owner for the work performed by Anchor pursuant to a waiver of lien submitted by [ICM]."

If Anchor's reading of Section 21.02(a) is correct, its complaint is sufficient. But if the trustee's reading is correct, the complaint must be dismissed because it would fail to state or imply that ICM received payment resulting from an Anchor lien waiver, an essential element under the trustee's reading of the statute. *See R.J.R. Servs., Inc. v. Aetna Cas. & Sur. Co.*, 895 F.2d 279, 281 (7th Cir. 1989) ("If the complaint fails to allege a requisite element necessary to obtain relief, dismissal is in order."). Indeed, because the information set out in Exhibit 1 contradicts the possibility that ICM used an Anchor lien waiver to obtain payment, the propriety of dismissal is underlined. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").

While there appear to be no published opinions construing the relevant language of Section 21.02(a), both the language and the context of the section establish that the trustee's reading of Section 21.02(a) is correct and that Anchor's must be rejected.[2]

---

[2] ICM cites *Raymond Professional Group v. William A. Pope Co.*, 2011 WL 528551 (N.D. Ill. Feb. 8, 2011) as bearing on the interpretation of Section 21.02(a). This decision, however, dealt with a prior version of the section that did not include the language at issue here, as explained in the bankruptcy judge's initial opinion in the case. *Raymond Prof'l Grp., Inc. v. William A. Pope*

7

1. *The wording of the section itself.*

The language of Section 21.02(a) relevant to the present dispute is fairly simple, consisting of two clauses that each refer to "waiver of mechanics lien":

> Any . . . contractor . . . who requests or requires the execution and delivery of *a waiver of mechanics lien* by any person who furnishes labor, services, [or] material . . . for the improvement of a lot or a tract of land . . .
>
> shall hold in trust the sums received . . . as the result of *the waiver of mechanics lien*, as trustee for the person who furnished the labor, services, [or] material . . . .

In the second clause, "waiver of mechanics lien" is introduced by the definite article "the," which indicates a particular item. *See* Am. Heritage Dictionary 1405 (3d college ed. 1993) (stating that "the" is used before nouns that "denote particular, specified persons or things"). In Section 21.02(a) the only particular, specified "waiver of mechanics lien" to which the second clause could refer is the waiver stated in the first clause—a waiver executed at the request of the contractor by the party claiming a trust interest in funds that the contractor had received. This structure—a noun introduced by "the" referring to a particular item identified earlier—is common in English. In its website titled "Learn English," the British Council states that "[w]e use the definite article in front of a noun when we believe the hearer/reader knows exactly what we are referring to," and gives previous identification as one way that a reader will know what

---

Co. *(In re Raymond Prof'l Grp., Inc.)*, 386 B.R. 678, 681–82 (Bankr. N.D. Ill. 2008).

"the" refers to. *See* http://learnenglish.britishcouncil.org/en/english-grammar/determiners-and-quantifiers/definite-article The example provided by the website is exactly parallel to the structure of Section 21.02(a): "A woman who fell 10 metres from High Peak was lifted to safety by a helicopter. The woman fell while climbing." *Id.*

The words of the section, then, impose a trust in favor of a subcontractor on funds paid to a contractor only if the payment results from a lien waiver executed by the subcontractor. That meaning is definitive.

> The plain language of the statute is the most reliable indication of legislative intent. *DeLuna v. Burciaga*, 223 Ill.2d 49, 59, 857 N.E.2d 229, 236 (2006). "[W]hen the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation." *DeLuna*, 223 Ill.2d at 59, 857 N.E.2d at 236.

*Weather–Tite, Inc. v. University of St. Francis*, 909 N.E.2d 830, 833 (Ill. 2009) (interpreting the Illinois Mechanics Lien Act).

    2. *The meaning of Section 22.01(a) in the context of the Illinois Mechanics Lien Act.* In addition to stating that statutes must be interpreted according to their clear language, the Illinois Supreme Court has also stated that a statute "should be evaluated as a whole; each provision should be construed in connection with every other section." *Wisnasky–Bettorf v. Pierce*, 965 N.E.2d 1103, 1106 (Ill. 2012). The context of Section 22.01(a) fully supports its clear meaning that a lien on funds paid to a contractor arises only in favor of a subcontractor whose lien waiver resulted in the payment.

9

Section 21(a) of the Illinois Mechanics Lien Act, 770 ILCS 60/21(a), protects a subcontractor's right to payment by granting subcontractors their own liens,.. and notice of subcontractors' liens may be given to the owner of the property being improved in either of two methods. One method is direct notice from the subcontractor under Section 24(a) of the Act, 770 ILCS 60/24(a). The other method is under Section 5(a) of the Act, 770 ILCS 60/5(a), which requires the contractor to provide the owner with "a statement in writing, under oath or verified by affidavit, of the names and addresses of all parties furnishing labor, services, material, fixtures, apparatus or machinery, forms or form work and of the amounts due or to become due to each."

Section 5(a) not only imposes a duty on the contractor to provide this affidavit before the owner makes payment, but also a duty on the owner to require the affidavit to be given. If the affidavit shows any sums due to subcontractors, the owner is required by Section 27 of the Act both to withhold from the contractor amounts sufficient to pay the subcontractors what they are owed and to pay those amounts to the subcontractors. 770 ILCS 60/27. If the owner pays the contractor the full amount due, including unpaid subcontractor charges, and the contractor does not pay the subcontractors, the liens of the subcontractors will be enforceable against the owner. See *Weather–Tite, Inc. v. University of St. Francis,* 909 N.E.2d at 836 (holding that an unpaid subcontractor listed in a contractor's affidavit could enforce a lien in the unpaid amount against the

10

owner's property even though that amount was included in what the owner paid the contractor).[3]

*Weather-Tite* also notes an alternative available to the owner who receives a contractor's affidavit listing unpaid subcontractors. Rather than withholding payment for the subcontractors, the owner can require lien waivers from them. "[A] lien waiver can be provided to the contractor when the subcontractor is paid, and the owner can require a lien waiver by every subcontractor when paying the contractor." 909 N.E.2d at 835. With lien waivers from the subcontractors, the owner can pay the contractor in full, free of the subcontractors' liens. This is the context in which Section 21.02(a) operates to protect the subcontractor's right to payment—with the payment coming from the contractor rather than owner: if, based on the subcontractor's lien waiver, the contractor obtains payment from the owner despite an unpaid subcontractor being listed on the contractor's affidavit, the contractor will hold the owner's payment sub-

---

[3] On the other hand, if a subcontractor is not listed in contractor's affidavit and the owner makes full payment to the contractor without notice of the unlisted claim, the unlisted subcontractor's lien is not enforceable. *See Doors Acquisition, LLC v. Rockford Structures Const. Co.*, 2013 IL App (2d) 120052, ¶ 6, 2013 WL 1788003, at *1(March 8, 2013) (holding that a sub-subcontractor not listed in the contractor's affidavit could not enforce a lien against the owner's property where the owner had no notice of the unlisted claim before making full payment). The same rule was noted in the Supreme Court's *Weather-Tite* decision, which discusses *Knickerbocker Ice Co. v. Halsey Bros. Co.*, 262 Ill. 241, 104 N.E. 665 (1914), a case in which a subcontractor's lien was limited to a falsely low unpaid balance shown in the contractor's affidavit. *Weather-Tite* explained the result this way: "[T]he owner had the right to rely on the contractor's sworn statement because the owner had no knowledge of the falsity of the statement." 909 N.E.2d at 836. Subcontractors can avoid the risk of a false contractor's affidavit by serving a notice of their liens on the owner.

ject to a trust in favor of the subcontractor's claim. If, however, the owner made payment to the contractor without being given a lien waiver from the subcontractor, there is no reason for Section 21.02(a) to create a trust in favor of the subcontractor, since the subcontractor would still have an enforceable lien against the owner.

Indeed, in the context of the present case, a trust in favor of Anchor would contradict one of the purposes of the Mechanics Lien Act—providing for payment to parties who improved the owner's property in a defined order of priority. If the amounts due to a contractor are insufficient to pay all claimants in full, the Act provides first for full payment of wages earned, then for pro rata payment to unpaid subcontractors, and finally, for payment of any remaining balance to the contractor. *See* 770 ILCS 60/15 and 60/26 (priority of wage claims over other liens), 60/27 and 60/30 (priority of payments by owner). Where an owner makes full payment to the contractor without notice of unpaid subcontractors' claims, a state court might well order the contractor to pay subcontractors in a manner consistent with this order of priority. In any event, there would be no reason to give a full priority to one subcontractor on the basis that it submitted to the contractor a lien waiver that had no bearing on the contractor's receipt of payment from the owner.

## Conclusion

As discussed above, Section 21.02(a) imposes a trust in favor of a subcontractor on a payment received by a contractor only if a lien waiver of the subcon-

tractor resulted in receipt of the payment. Anchor's complaint contains no assertions of fact directly or indirectly addressing this requirement for creation of a trust, and so dismissal is appropriate.

Courts ordinarily grant leave to amend an inadequate complaint, but leave may be denied if an amendment would be futile. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). There is such futility here. First, the trustee asserted the same basis for dismissal of Anchor's trust claim in response to an earlier version of Anchor's complaint. *See* Adversary Proceeding 12-01659, Docket No. 12 (Memorandum in Support of Trustee's Motion to Dismiss) at 5 (arguing that "payment on account of a lien waiver received from the subcontractor is a prerequisite to formation of the statutory trust" and that this element was not alleged by the earlier complaint). Though given the opportunity, Anchor did not include an allegation addressing the asserted deficiency in its current complaint. A second, and more important consideration is that Anchor's complaint asserts facts—particularly in Exhibit 1—indicating that Anchor's lien waiver had nothing to do with ICM's receipt of payment. Anchor cannot amend the complaint in good faith to assert the contrary. Accordingly, dismissal of the complaint will be with prejudice.

Dated: September 11, 2013

                                            Eugene R. Wedoff
                                            United States Bankruptcy Judge